**Douglas A. NASH**

v.

**Dr. Martin H. WENNAR, Richard L. Bashaw and A. James Walton, Jr.**

**Civ. A. No. 85–309.**

United States District Court,
D. Vermont.

Oct. 15, 1986.

Stephen W. Gould, Office of the Defender General, Montpelier, Vt., for plaintiff.

Andrew W. MacLean, Asst. Atty. Gen., Dept. of Corrections, State of Vt., Waterbury, Vt., for defendants.

COFFRIN, Chief Judge.

In this 42 U.S.C. § 1983 action plaintiff, a state prisoner, contends that while receiving medical care he was subjected to cruel and unusual treatment behavior in violation of his Fourth, Eighth and Fourteenth Amendment rights. Defendants' moved to dismiss and the magistrate, in a "Report and Recommendation" dated June 4, 1986, recommended that we grant defendants' motion. Before us is plaintiff's objections to that report.

Based on the following discussion and our review of the record, we reach the same conclusion as the magistrate and grant defendants' motion.

## I. Background

Plaintiff, a former prisoner at the Northwest State Correctional Facility ("NSCF") in St. Albans, Vermont, filed this § 1983 case *pro se* on January 2, 1986. The case arises from a colonoscopy performed on plaintiff on November 20, 1984 by defendant Wennar, a physician. Defendants Bashaw and Walton, Jr. are respectively alleged to have been the Superintendent of NSCF and the Commissioner of the Vermont Department of Corrections at the time material to this lawsuit.

In the relevant portion of the complaint, plaintiff alleges:

On November 20th, 1984 Plaintiff was taken to the North Western Medical Center in St. Albans, Vermont for a colonOscopy [sic] exam. the [sic] said exam was performed by corrections doctor Martin H. Wennar (named Defendant) who while sedating plaintiff stated "I'm going to send you on the wildest trip you've ever been on" which frightened Plaintiff and put him in fear of immenant [sic] harm. During this exam Plaintiffs [sic] feet were chained (although two guards were present and plaintiff was sedated) and the examining room door was open (to a

main hallway). At one point during the procedure Dr. Wennar allowed the guards to participate in the exam. Plaintiff beleaves [sic] the foregoing incident violated his rights under the 4th, 8th and 14th amendments to the U.S. Constitution.

On January 16, 1986, defendants moved to dismiss the complaint, arguing the complaint failed to show any involvement by defendants Bashaw and Walton[1] and further failed to show that the defendant doctor acted under state law. Defendants later supplied the court with an affidavit by Dr. Wennar, and asked the court to consider the motion as a Rule 56 motion for summary judgment.

After plaintiff filed two opposition briefs and a hearing was held, the magistrate filed his report and recommendation on June 4, 1986. The magistrate recommended that defendants' motion to dismiss be granted, relying primarily upon his former report in *Michaels v. Pilette*, No. 85–125 (D.Vt. Jan. 10, 1986), wherein he had held that a physician who treats an inmate pursuant to a contract with the state was not acting under color of state law and therefore could not be held liable for damages in a § 1983 action.

Pursuant to 28 U.S.C. § 636 and the local rules for magistrates, Rule 1(D)(II)(A), plaintiff filed objections on July 1, 1986 to the magistrate's proposed findings and sought *de novo* review.

## II. Discussion

Defendant Wennar is a licensed physician, who primarily treats private patients, but also provides medical services for inmates at NSCF through a contract with the State. Affidavit of Martin Wennar, M.D., ¶¶ 1 and 2. Plaintiff's main disagreement with the magistrate's report is the magistrate's conclusion that the defendant doctor's acts did not comprise "state action".[2]

---

1. Plaintiff concedes that his complaint failed to state a complaint against defendants Bashaw and Walton and has agreed to their dismissal. We therefore adopt the magistrate's recommendation to that effect.

2. Plaintiff also argued that the magistrate's conclusion that Dr. Wennar did not act under color of state law is erroneous because, when he made this recommendation, the magistrate had no facts before him concerning the defendant doctor's relation to the state. Specifically,

After conducting a *de novo* review, made upon consideration of the papers filed in this action, the magistrate's report in *Michaels, supra* and the applicable caselaw, we agree with the conclusion drawn by the magistrate.

■ The test for determining whether the defendant doctor in this case acted "under color of state law" as required by § 1983 is the same as that for determining whether the doctor's alleged acts comprised "state action" sufficient to show the claimed violation of the Fourteenth Amendment. *Lugar v. Edmondson Oil Co., Inc.*, 457 U.S. 922, 935, 102 S.Ct. 2744, 2752, 73 L.Ed.2d 482 (1982); *Rendell-Baker v. Kohn*, 457 U.S. 830, 838, 102 S.Ct. 2764, 2769, 73 L.Ed.2d 418 (1982). A person's actions may comprise state action when the alleged infringement of federal rights is "fairly attributable to the State", which in turn requires an examination of the facts. *Lugar*, 457 U.S. at 937, 939, 102 S.Ct. at 2753, 2754.

The "fair attribution" test requires a two-part approach:

> First, the deprivation must be caused by the exercise of some right or privilege created by the State or by a rule of conduct imposed by the State or by a person for whom the State is responsible.... Second, the party charged with the deprivation must be a person who may fairly said to be a state actor.

*Lugar*, 457 U.S. at 937, 102 S.Ct. at 2753. In our view, defendants' arguments center around the first part of the test while plaintiff's arguments relate to the second principle.

■ Initially addressing the second portion of the test, we find that the doctor could "fairly be said to be a state actor". *Lugar, supra.* Dr. Wennar, by treating plaintiff under the state contract, was help-ing the state to fulfill its "public function" of providing medical treatment to state prisoners. See *Lugar*, 457 U.S. at 939, 102 S.Ct. at 2754 (the "public function" test may convert a private party into a state actor). While a "public function" involves only those areas which have "traditionally been the exclusive perogative of the state", *Jackson v. Metropolitan Edison Co.*, 419 U.S. 345, 353, 95 S.Ct. 449, 454, 42 L.Ed.2d 477 (1974), this requirement is met because the Eighth and Fourteenth Amendments impose duties, ultimately born by the State, with respect to the type of care that the State must provide to inmates. *See, Estelle v. Gamble*, 429 U.S. 97, 103–04, 97 S.Ct. 285, 290–91, 50 L.Ed.2d 251 (1976). *See also, Todaro v. Ward*, 565 F.2d 48, 52 (2d Cir.1977) (Eighth Amendment claim is stated when prison officials intentionally deny access to medical care or interfere with prescribed treatment).

Although the providing of medical care to state prisoners is generally a "public function" for which the State is responsible, we must also analyze the role played by Dr. Wennar under the first prong of the "fair attribution" test. Specifically, the alleged deprivations "must be caused by the exercise of some right or privilege created by the State or by a rule of conduct imposed by the State or by a person for whom the State is responsible". *Lugar, supra.* In short, the question is "whether the claimed deprivation has resulted from the exercise of a right or privilege having its source in state authority". *Id* 457 U.S. at 939, 102 S.Ct. at 2755.

■ The alleged deprivations occurred while Dr. Wennar was rendering medical treatment to plaintiff. In essence, the complaint alleges that the doctor's treatment methods were cruel and unusual, in that

---

plaintiff stresses the facts that the magistrate relied upon did not expressly refer to Dr. Wennar's affidavit and the magistrate referred to the motion as a motion to dismiss rather than a motion for summary judgment.

We find this argument unavailing because the magistrate indirectly referred to the controlling contents of the affidavit when he stated that, "[d]efendant Wennar is a private physician who treats inmates at the Correctional Facility through a contract with the State of Vermont". Magistrate's Report and Recommendation, page 1. Moreover, further discussion of this objection is unnecessary, given our *de novo* review of defendants' motion.

the doctor intentionally frightened plaintiff while the latter was shackled, and that the doctor violated plaintiff's reasonable privacy expectations by performing the colonoscopy while the examining room door was open. Because these alleged events arose out of the doctor-patient relationship between Dr. Wennar and plaintiff, the alleged deprivations did not result in a right or privilege having its source in state authority. Rather, as the Fourth Circuit has accurately observed:

> Private physicians exercise their own judgment and make their own medical decisions according to standards not established by the state. *Blum v. Yaretsky*, 457 U.S. 991, 1008–09, 102 S.Ct. 2777, 2788, 73 L.Ed.2d 534 (1982). Their physician-patient relationships are the same, with the same obligations and duties, both within and without the prison walls. A private physician is not, and by the nature of his function cannot be the servant of an administrative supervisor.

*Calvert v. Sharp*, 748 F.2d 861, 863 (4th Cir.1984), *citing* The American Medical Association Standards for Health Services in Prisons; The American Medical Association Principles of Medical Ethics; The Hippocratic Oath. As that Court further noted, "[t]he ethical obligations of physicians date back to the time of the ancient Greeks".

■ Thus, like the public defender in *Polk County v. Dodson*, 454 U.S. 312, 321, 102 S.Ct. 445, 451, 70 L.Ed.2d 509 (1981), while acting under an employment contract with the State, Dr. Wennar was "not amenable to administrative direction in the same sense as other employees of the State". Instead, the doctor worked under separate canons of professional ethics that mandated his exercise of independent judgment on behalf of his patient. *Id.* These canons are not derived from state law.[3]

However we do not suggest that a doctor who treats state prisoners under contract can never be held liable as a state actor for his acts. Liability may flow where the doctor also discharges administrative or custodial duties relating to the medical care of patients. *See Estelle, supra; O'Connor v. Donaldson*, 422 U.S. 563, 95 S.Ct. 2486, 45 L.Ed.2d 396 (1975); *See also, Polk County*, 454 U.S. at 320, 102 S.Ct. at 450. Further, the state action requirement may be satisfied where the State exercises coercive power over the private decision, or provides such encouragement, either overtly or covertly, that the choice must in law be deemed to be that of the State. *Blum v. Yaretsky*, 457 U.S. 991, 1004, 102 S.Ct. 2777, 2785, 73 L.Ed.2d 534 (1982); *Rendell-Baker v. Kohn*, 457 U.S. 830, 840, 102 S.Ct. 2764, 2770, 73 L.Ed.2d 418 (1982). These latter types of cases might arise where the deprivation has its source in internal prison policies followed by the doctor, or where prison personnel encourage the wrongful conduct or continue to employ a doctor with a history of known wrongful conduct.

In this case, there are no facts suggesting that the State had any role or forewarning in the alleged conduct by the doctor. Because the alleged deprivations arose out of the treatment methods used by a private physician who is subject to professional ethical obligations which impose duties towards the patient, we do not find the alleged conduct to be "fairly attributable" to the State. Because the state action requirement is lacking, we find that plaintiff failed to support the alleged con-

---

**3.** It is true that state law requires state prison personnel and employees to provide inmates with medical care: "Officers and employees of any correctional facility shall render available medical assistance to any inmate when there is reason to believe that the inmate is in need of assistance". 28 V.S.A. § 801(c).

However, this statute in no way interferes with the ethical duties that form the primary proscription against unprofessional conduct by physicians while treating patients. The statute, like the Eighth and Fourteenth Amendment, may impose a duty on the state to provide medical treatment to inmates, but it does not in itself provide a state source for the alleged deprivations present in this case. That is, the statute did not grant the doctor the right to behave unprofessionally or impose a rule of conduct that encouraged the alleged deprivations.

stitutional deprivations and that defendant Wennar acted under color of state law.[4]

Accordingly, we adopt the magistrate's recommendation that we grant defendants' motion and ORDER that judgment be ENTERED for all defendants.

**4.** We also stress that our disposition of plaintiff's § 1983 case does not leave him without redress. Plaintiff may pursue a state tort action, possibly framed as claims for medical malpractice or intentional infliction of emotional distress. Further, he may pursue a disciplinary action against Dr. Wennar before the Vermont State Board of Medical Practice, pursuant to 26 V.S.A. § 1311 *et seq.* See e.g. 26 V.S.A. § 1354(7), (19) and (22) (defining the term "unprofessional conduct" to include immoral conduct while practicing as a physician, the consistent use of nonaccepted procedures, and failure to use reasonable skill whether or not actual injury to the patient results).